**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 17-21333 (JJT) |
| | ) | | |
| TAMMY MARIE ROSE, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| | ) | | |
| JOHN J. O'NEIL, JR., TRUSTEE, | ) | ADV. PRO. No. | 18-02022 (JJT) |
| PLAINTIFF | ) | | |
| V. | ) | RE: ECF Nos. | 1, 22, 25, 44 |
| | ) | | |
| NICOLE M. ROSE and | ) | | |
| MAGDALENA CAMPLIN, | ) | | |
| DEFENDANTS. | ) | | |
| | ) | | |

## APPEARANCES

Jeffrey Hellman, Esq.                                                    Attorney for the Plaintiff
Law Offices of Jeffrey Hellman, LLC
195 Church Street, 10th Floor
New Haven, CT 06510

Stephen T. Kulig, Esq.                                                    Attorney for the Defendants
Brigham & Kulig
69 Broad Street
Danielson, CT 06239

## MEMORANDUM OF DECISION AFTER TRIAL OF ADVERSARY PROCEEDING

I.      INTRODUCTION

The Chapter 7 Trustee, John J. O'Neil, Jr. ("Trustee"), initiated this adversary proceeding

on June 12, 2018, seeking to recover an alleged fraudulent transfer from the debtor, Tammy

Marie Rose ("Debtor"), to the defendants, Nicole M. Rose and Magdalena Camplin (collectively

"Defendants") (ECF No. 1). That transfer concerned a piece of real property in Sterling,

Connecticut. The Trustee later amended the complaint to add a second fraudulent transfer claim

pertaining to a second piece of real property also located in Sterling, Connecticut (ECF No. 22). A trial was held on November 13, 2018 (ECF No. 31), at which the Court received exhibits and oral testimony. The parties have since filed proposed findings of fact and conclusions of law (ECF Nos. 33, 37, and 39). The Trustee then amended the operative complaint (ECF No. 44), to which the Defendants did not object (ECF No. 42), to fix a scrivener's error within the first amended complaint. Having reviewed the evidence and the law, the Court concludes that the transfers at issue were fraudulent and enters judgment in favor of the Trustee.

II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).[1]

III.    FACTS AND PROCEDURAL HISTORY

The Court notes the following procedural history and finds the following facts:

1.    The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 31, 2017(Docket No. 17-21333, ECF No. 1) .

2.    To date, proofs of claim have been filed totaling $77,171.85, of which, $30,570.35 is claimed for student loan debt. All of the claims are unsecured.

___

[1] The claims asserted against the Defendants may be "*Stern* claims." *See generally Stern v. Marshall*, 564 U.S. 462 (2011); *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 37–38 (2014); *but see Paragon Litig. Tr. v. Noble Corp. PLC (In re Paragon Offshore PLC)*, 2019 WL 1112298, at *6–10 (Bankr. D. Del. March 11, 2019). In their answer (ECF No. 25), the Defendants agreed with the Trustee that this Court has jurisdiction and that the matter is a core proceeding. The parties then proceeded to try the case before this Court. Out of an abundance of caution, the Court twice instructed the parties to file a statement consenting to this Court entering final judgment in the matter (ECF Nos. 35 and 45). The Trustee did so on both occasions (ECF Nos. 36 and 46), but the Defendants have not. Nevertheless, the Court concludes that the Defendants' answer, their actions in trying the case, and their notification of the right to refuse adjudication by this Court constitute—at a minimum—the implied consent necessary for this Court to enter final judgment. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947–48 (2015). If this decision is appealed to the District Court and it disagrees with this determination and also finds the underlying claims to be "*Stern* claims," it may treat this decision as proposed findings of fact and conclusions of law. Fed. R. Bankr. P. 8018.1.

3.      In contrast, the Debtor's petition listed $118,485.53 in liabilities, of which $47,317.00 is for student loan debt, and $5,540.00 in assets (Docket No. 17-21333, ECF No. 1).

4.      Magdalena Camplin is the Debtor's mother. Tr. 0:07.

5.      Nicole M. Rose is the Debtor's daughter. Tr. 0:07.

6.      On March 19, 2007, Magdalena Camplin received a committee deed for real property located at 1065 Plainfield Pike, Sterling, Connecticut ("1065 Plainfield Pike") from a foreclosure sale for $60,000.00. Ex. 1. Magdalena Camplin paid the entire purchase price. Tr. 0:33.

7.      The Debtor contributed no funds to the purchase described in ¶ 6. Tr. 0:09.

8.      On June 25, 2007, Magdalena Camplin quitclaimed her fee interest in 1065 Plainfield Pike to the Debtor for consideration of $1.00. Ex. 2.

9.      Magdalena Camplin operated a hot dog stand at 1065 Plainfield Pike, from which the Debtor received no proceeds. Tr. 0:12–13, 0:35–36.

10.     On May 4, 2015, the Debtor quitclaimed 1065 Plainfield Pike to the Defendants for no consideration. Ex. 3; Tr. 0:29–30.

11.     At the time of the transfer described in ¶ 10, the Debtor was insolvent and unable to pay her debts as they became due. Tr. 0:07–08, 0:17, 0:25.

12.     At the time of the transfer described in ¶ 10, 1065 Plainfield Pike was unencumbered by any mortgage or other lien. Tr. 0:24.

13.     On November 26, 2007, Magdalena Camplin executed and delivered a mortgage to Sovereign Bank on her home located at 375-377 Pine Hill Road, Sterling, Connecticut ("375-377 Pine Hill Road") in the amount of $150,000.00. Ex. 4.

14. Using the funds described in ¶ 13 and other funds, on December 3, 2007, Magdalena Camplin and the Debtor purchased 1067 Plainfield Pike, Sterling, Connecticut ("1067 Plainfield Pike") for $162,500.00 and took title as joint tenants with rights of survivorship. Ex. 5; Tr. 0:38, 0:40. Magdalena Camplin paid the entire purchase price. Tr. 0:38–40.

15. The Debtor contributed no funds to the purchase described in ¶ 14. Tr. 0:12, 0:40.

16. The house located at 1067 Plainfield Pike was rented out to third-party tenants. Tr. 0:13–14, 0:41. Magdalena Camplin collected and kept all rents. Tr. 0:14, 0:41, 0:53. The Debtor did not contribute to any upkeep on the property. Tr. 0:41, 0:59.

17. On May 4, 2015, the Debtor and Magdalena Camplin quitclaimed 1067 Plainfield Pike to the Defendants for no consideration. Ex. 6; Tr. 0:29–30.

18. At the time of the transfer described in ¶ 17, the Debtor was insolvent and unable to pay her debts as they became due. Tr. 0:07–08, 0:17, 0:25.

19. At the time of the transfer described in ¶ 17, 1067 Plainfield Pike was unencumbered by any mortgage or other lien. Tr. 0:28–29.

20. On December 1, 2017, the Defendants sold and conveyed 1067 Plainfield Pike by warranty deed to unrelated third parties for $160,000.00. Ex. 7; Tr. 0:46.

21. Nicole M. Rose received no proceeds from the sale described in ¶ 20. Tr. 0:49, 0:58.

22. Magdalena Camplin used part of the proceeds described in ¶ 20 to pay the mortgage on her home described in ¶ 10. Ex. 8; Tr. 0:29, 0:47.

23. Magdalena Camplin, not the Debtor, paid all taxes and insurance on 1065 Plainfield Pike and 1067 Plainfield Pike during the time the Debtor owned the properties. Tr. 0:19, 0:36, 0:41.

IV.     CONCLUSIONS OF LAW

A.      The Defendants' Resulting Trust Defense Was Waived

At trial, the Defendants claimed, for the first time, that the Debtor held only bare legal title to 1065 Plainfield Pike and 1067 Plainfield Pike. Such was not pleaded, and the Defendants have not moved to amend their pleadings to assert that claim as a defense. Later, in their Proposed Findings of Facts and Conclusions of Law (ECF No. 37), the Defendants cited to one nonbinding Connecticut authority stating that a claim of equitable title can be used a defense in a summary process action. *See Harvey v. Pilewski*, 37 Conn. Supp. 889, 441 A.2d 869 (Conn. Super. Ct. 1982).

The Trustee, in his reply (ECF No. 39), responded to this sparsely-developed claim by citing to various authorities explaining a "resulting trust,"[2] which is, in essence, what the Defendants are claiming. The Trustee also cited to several binding Connecticut authorities holding that the law presumes a gift, not a resulting trust, where the transferee is the transferor's child, which is exactly the situation we have here. *See, e.g., Farrah v. Farrah*, 187 Conn. 495, 500, 446 A.2d 1075 (1982).

The problem with much of this discussion, as already noted, is that the Defendants did not plead a resulting trust anywhere and only raised the argument at trial and after. To date, the Defendants have not moved to amend their pleadings to include any defenses. Under Fed. R. Civ. P. 8, the Defendants were required to raise their resulting trust claim as a defense in their pleadings. Although the Second Circuit has allowed the assertion of unpleaded affirmative defenses at the summary judgment stage, *see Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65

---

[2] "Resulting trusts arise by operation of law at the time of a conveyance when the purchase money for property is paid by one party and the legal title is taken in the name of another. . . . The presumed intent from which the law infers a trust may be rebutted by proof of contrary intent." *Farrah v. Farrah*, 187 Conn. 495, 500, 446 A.2d 1075 (1982) (citations omitted).

(2004), such an exception to the pleading rules does not extend to unpleaded matters that are not raised until trial. Indeed, the Second Circuit "recognized that waiver [of an unpleaded defense] may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party." *Id.* (citation and internal quotation marks omitted). The Second Circuit also noted that consideration of an unpleaded defense is proper where the opposing party has "an opportunity to respond substantively to the defense." *Id.* Here, the Defendants did not raise their resulting trust claim at the first pragmatically feasible time. The facts underlying their claim have been known to them since 2007. Such delay prevented the Trustee from having a full and fair opportunity to collect and marshal evidence and arguments prior to the trial beginning that would be responsive to this claim.[3]

And, although Fed. R. Civ. P. 15(b)(2) states that"[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings[,]" the Court does not find any such consent on the Trustee's part. Therefore, the Court finds that the Defendants waived any claim of a resulting trust or similar equitable claim regarding 1065 Plainfield Pike and 1067 Plainfield Pike.

---

[3] The Connecticut Appellate Court has stated: "It would be fundamentally unfair to allow any defendant to await the time of trial to introduce an unpleaded defense. Such conduct would result in 'trial by ambuscade' to the detriment of the opposing party." *Oakland Heights Mobile Park, Inc. v. Simon*, 36 Conn. App. 432, 436–37, 651 A.2d 281 (1994) (citation omitted). Although this case is governed by the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure, the Court agrees with the sentiment expressed, especially in light of the fact that the claims in this case arise under state law.

B.    The Debtor's Transfers of 1065 Plainfield Pike and 1067 Plainfield Pike Were Fraudulent

1.    <u>Applicable Law</u>

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Conn. Gen. Stat. § 52-552e(a). "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Conn. Gen Stat. § 52-552f(a). Subject to defenses available under Conn. Gen. Stat. § 52-552i, none of which are relevant here, a creditor may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim[.]" Conn. Gen. Stat. § 52-552h(a). The Trustee may pursue the remedies of a creditor under 11 U.S.C. § 544 and recover the property transferred, or its value, for the benefit of the estate under 11 U.S.C. § 550.

"Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." Conn. Gen. Stat. § 52-552d(a). "Courts in this district applying Connecticut's [Uniform Fraudulent Transfer Act] as well as courts interpreting the [Uniform Fraudulent Transfer Act] in other jurisdictions have held value

7

to mean the type of consideration capable of satisfying or partially satisfying a creditor's claims." *Cadle Co. v. White*, 2006 WL 798900, at *9 (D. Conn. Mar. 21, 2006) (citations omitted). "Further, the drafters of the [Uniform Fraudulent Transfer Act] believed that value must be considered from the standpoint of the creditor[.] Value is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition." *Id.* (quoting Unif. Fraudulent Transfer Act § 3 cmt. 2) (internal quotation marks omitted). "Only consideration of substantially equivalent value leaves the debtor in a financially similar position after the conveyance. A conveyance made for consideration of nominal or no monetary value leaves the debtor in a much weakened financial position which hinders his creditors. This is precisely the scenario the statute attempts to prevent. Recognizing consideration of no monetary value as a defense to a fraudulent conveyance would emasculate the statute[.]" *Id.* at *10 (citation and internal quotation marks omitted).

2.   The Defendants Did Not Give Reasonably Equivalent Value

The Defendants do not dispute that the transfers of 1065 Plainfield Pike and 1067 Plainfield Pike were made within the applicable statutory time period. The Defendants also concede that the Debtor was insolvent at the time of those transfers, and the Court has found that the Debtor was unable to pay her debts as they became due. Finally, the Defendants do not dispute that the Debtor received absolutely no consideration for either transfer. The only argument the Defendants make is that the Debtor received reasonably equivalent value because the amount she received for the transfers ($0) is precisely the same amount she paid to receive the properties in the first place.[4]

---

[4] This argument ignores the fact that the Debtor received her interests in the two properties from Magdalena Camplin but quitclaimed said interests to both Magdalena Camplin and Nicole M. Rose.

8

The Defendants' argument is entirely misplaced. As case law demonstrates, the notion of reasonably equivalent value does not consider what amount was paid in the past so much as what amount could be used to satisfy debts to a creditor at the time of the transfer. *See id.* at *9. The Defendants' argument is also belied by the fact that they sold 1067 Plainfield Pike for $160,000.00 to third parties less than three years after receiving the property from the Debtor. That sale, which was the result of an arms-length transaction, likely demonstrates reasonably equivalent value for 1067 Plainfield Pike because it seemingly produced fair and comparable value that could have satisfied some amount of the Debtor's debts.

Because the Defendants' argument regarding reasonably equivalent value fails, the Debtor's transfers of 1065 Plainfield Pike and 1067 Plainfield Pike were fraudulent under Conn. Gen. Stat. §§ 52-552e and 52-552f(a). Under applicable Bankruptcy Code provisions, the Trustee may avoid those transfers and recover those properties or their values.[5]

## V.    CONCLUSION

The Court ADJUDGES and DECREES that:

1.    Judgment shall enter in favor of the Trustee and against the Defendants on Count

I, avoiding the transfer of the Debtor's fee interest in 1065 Plainfield Pike,

---

[5] Because 1065 Plainfield Pike was not subsequently sold, it can be recovered by the Trustee. The property at 1067 Plainfield Pike, however, was sold to innocent third parties who fit the parameters of 11 U.S.C. § 550(b)(1). As such, the Trustee must look to the Defendants to recover the value received from the sale. Such value will not include any amount Magdalena Camplin used to pay down the mortgage she gave on her home at 375-377 Pine Hill Road because such mortgage did not encumber 1067 Plainfield Pike. Because the Debtor was a joint tenant of 1067 Plainfield Pike with Magdalena Camplin, the Trustee may not be entitled to the entire $160,000.00 obtained.

Additionally, although the Defendants claimed that Nicole M. Rose subsequently quitclaimed her interest in 1065 Plainfield Pike to Magdalena Camplin, such is not borne out by the evidence. Exhibit 9, which is a quitclaim deed from Nicole Rose to Magdalena Camplin, does not, as the Defendants claimed, pertain to 1065 Plainfield Pike. The description of the property in Exhibit 9, including its metes and bounds, does not match that of the other deeds in evidence describing 1065 Plainfield Pike and instead pertains to a property on Pine Hill Road. Therefore, Nicole M. Rose remains liable on both transfers.

Sterling, Connecticut as fraudulent and ordering the conveyance of the transferred interest to the Trustee; and

2.     Judgment shall enter in favor of the Trustee and against the Defendants on Count II, avoiding the transfer of the Debtor's joint tenant interest in 1067 Plainfield Pike, Sterling, Connecticut as fraudulent and awarding damages to the Trustee in an amount to be determined following a hearing in damages on April 23, 2019 at 10:00 A.M.[6]

Because this Memorandum does not dispose of all of the Trustee's claims, it is, therefore, not a final judgment, order, or decree subject to appeal under 28 U.S.C. § 158. *See Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 982 F.2d 769, 774–76 (2d Cir. 1992). After determining the value of the Trustee's interest in 1067 Plainfield Pike, a separate Judgment on each Count of the Amended Complaint will enter, which will then make this decision final for purposes of appeal.

IT IS SO ORDERED at Hartford, Connecticut this 26th day of March 2019.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[6] The Court would entertain, prior to the hearing, any stipulation the parties may reach regarding the value of the Trustee's avoided interest in 1067 Plainfield Pike, without prejudice to any party's appellate rights regarding liability.

10